# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re: MEUNGHEE JOUNG,    No. 7-10-15997 JL

Debtor.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Debtor's Motion to Convert Case to One Under Chapter 11 ("Motion to Convert")(Docket No. 21) and Creditor BANK '34's objection thereto. *See* Docket No. 24. The Debtor seeks to convert her Chapter 7 case to a case under Chapter 11 in accordance with 11 U.S.C. § 706, which provides, in part, that a debtor may convert a Chapter 7 case to Chapter 11 at any time, unless the case has previously been converted. *See* 11 U.S.C. §706(a). BANK '34 asserts that the Debtor has not acted in good faith and requests the Court to deny the Motion to Convert. The Court held a final, evidentiary hearing on the Motion to Convert on May 26, 2011 and took the matter under advisement.

The parties agree that the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) applies to a debtor's request to convert from Chapter 7 to Chapter 11.[1] In *Marrama*, the Supreme Court held that a debtor who acts in bad faith does not have an absolute right to convert from Chapter 7 to Chapter 13 under 11 U.S.C. § 706(a). *Id.* at 372. Based on the evidence presented at the final hearing and the relevant case law, and being otherwise sufficiently informed, the Court finds that the Debtor's bad acts are significant and warrant a denial of the Motion to Convert. However, in the

---

[1] *See In re George Love Farming, LC,* 366 B.R. 170 (Bankr.D.Utah 2007)(applying *Marrama* to a motion to convert from Chapter 7 to Chapter 11); *In re FMO Associates II, LLC,* 402 B.R. 546 (Bankr.E.D.N.Y. 2009)(applying *Marrama* to Chapter 7 debtor's motion to convert case to Chapter 11). *See also, In re Broad Creek Edgewater LP,* 371 B.R. 752 (Bankr.D.S.C. 2007)(applying *Marrama* to involuntary debtor's motion to convert from Chapter 7 to Chapter 11). Even prior to the *Marrama* decision, some courts would deny a request to convert from Chapter 7 to Chapter 11 where "cause" existed that would warrant dismissal or conversion under Chapter 11. *See, e.g., In re Eugene Alexander, Inc.,* 191 B.R. 920 (Bankr.M.D.Fla. 1994)(denying the debtors' request to convert from Chapter 7 to Chapter 11 where "cause" existed to dismiss or convert under Chapter 11).

Court's view, there exists a reasonable possibility that the Debtor could overcome her prior bad acts sufficient to justify conversion of this case to a case under Chapter 11 by proposing a Chapter 11 plan that offers significantly more to creditors than they could expect to receive if the case continued under Chapter 7. For this reason, the Court will deny the Motion to Convert without prejudice.

DISCUSSION

A. Conversion Under 11 U.S.C. § 706(a)

Conversion from Chapter 7 to Chapter 11 is governed by 11 U.S.C. § 706(a), which provides:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
>
> 11 U.S.C. § 706(a).

Conversion under 11 U.S.C. § 706(a) is further limited by 11 U.S.C. § 706(d), which requires that the "debtor may be a debtor" under the converted chapter. 11 U.S.C. § 706(d). The Debtor in this case filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 2, 2010. She filed her Motion to Convert on January 6, 2011. *See* Docket No. 21. The case has not previously been converted. She is otherwise eligible to be a debtor under Chapter 11. *See* 11 U.S.C. § 109(a) ("only a person that resides or has a domicile, a place of business, or property in the United states . . . may be a debtor under this title."). Except for the additional limitations implicated by *Marrama,* the Debtor would be allowed to convert to Chapter 11.

B. *Marrama's* Limitations on the One-Time Right to Convert

In *Marrama* the Supreme Court found that eligibility for conversion from Chapter 7 to Chapter 13 under 11 U.S.C. § 706(a) is dependent on two things: first, whether the debtor is

2

eligible to be a debtor under chapter 13 under 11 U.S.C. § 109(e); and second, whether the case, if converted, would be dismissed under 11 U.S.C. § 1307(c). The *Marrama* case focused on the latter ground for denying a motion to convert or dismiss. The Court reasoned that a determination that the converted chapter 13 case would be dismissed for cause "is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Marrama,* 549 U.S. at 374. By denying a request to convert upon a finding of bad faith, "in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors," the bankruptcy court is exercising its broad authority granted under 11 U.S.C. § 105(a) "to take any action that is necessary or appropriate 'to prevent an abuse of process.'" *Id.* at 375. Thus, under *Marrama,* a debtor can forfeit his or her right to convert under 11 U.S.C. §706(a) when the debtor's bad faith conduct is sufficient to warrant dismissal of a converted chapter 13 case.

*Marrama*'s limitations on a debtor's one-time right to convert under 11 U.S.C. § 706(a) also apply when a debtor seeks to convert a Chapter 7 case to Chapter 11. Like 11 U.S.C. § 1307(c), which permits dismissal of a Chapter 13 case for "cause," 11 U.S.C. § 1112(b) permits dismissal or conversion of a Chapter 11 case for "cause." Although none of the eleven nonexclusive specified causes for the dismissal of a Chapter 13 case under 11 U.S.C. § 1307(c) include bad faith conduct occurring prior to commencement of the Chapter 13 case, dismissal for such bad-faith conduct is implicitly authorized by the words "for cause" contained in 11 U.S.C. § 1307(c). *Marrama,* 549 U.S. at 365. Similarly, although none of the sixteen nonexclusive specified causes for the conversion or dismissal of a Chapter 11 case under 11 U.S.C. § 1112(b) include bad faith conduct occurring prior to commencement of the Chapter 11 case,[2] conversion or dismissal for such bad-faith conduct is implicitly authorized by the words "for cause"

---

[2] *See* 11 U.S.C. §1112(b)(4).

contained in 11 U.S.C. § 1112(b).[3] Thus, consistent with *Marrama,* when a debtor acts in bad faith in connection with his or her bankruptcy case, it may be appropriate to deny such debtor's request to convert from Chapter 7 to Chapter 11 under 11 U.S.C. § 706(a).

    C.   <u>The Debtor's Bad Faith Conduct</u>

In *Marrama,* the Supreme Court expressly declined to specify what conduct qualifies as "bad faith" sufficient to deny conversion from chapter 7 to chapter 13,[4] but suggested that forfeiture of the right to convert may be premised on "fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Marrama,* 549 U.S. at 374-375. The surrounding facts and circumstances in *Marrama* that supported the bankruptcy court's decision to deny the debtor's request to convert to Chapter 13 included several false statements and omissions in the debtor's schedules and statement of financial affairs regarding the ownership, value and pre-petition transfer of his principal asset. *Id.* at 368.

When considering whether to deny a request to convert from Chapter 7 to Chapter 11 under 11 U.S.C. § 706(a), courts often look to the same factors used when considering whether to dismiss or convert a debtor's Chapter 11 case based on bad faith.[5] Those factors include:

---

[3] *See In re Landmark Atlantic Hess Farm, LLC,* ___ B.R. ___, 2011 WL 831724, *2 (Bankr.D.Md. Mar. 3, 2011)(acknowledging that "'bad faith' is also a basis for dismissal or conversion" under § 1112(b))(citation omitted); *In re Daniels,* 362 B.R. 428, 432 (Bankr.S.D.Iowa 2007)(stating that a "[l]ack of good faith, raised as an instance of cause, permits . . . conversion under 11 U.S.C. § 1112(b).")(citation omitted). *See also, In re Integrated Telecom Express, Inc.,* 384 F.3d 108 (3rd Cir. 2004)(affirming court's dismissal of Chapter 11 case based on debtor's lack of good faith in filing the petition); *In re First Nat'l Bank of Sioux City v. Kerr (In re Kerr),* 908 F.2d 400, 404 (8th Cir. 1990)(a bankruptcy court can dismiss a case under 11 U.S.C. §1112(b) based on the debtor's bad faith).

[4] *Marrama,* 549 U.S. at 375 n. 11 (stating that "[w]e have no occasion here to articulate with precision what conduct qualifies as 'bad faith' sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7.").

[5] *See e.g., In re George Love Farming, LC,* 366 B.R. 170, 178 (Bankr.D.Utah 2007)(applying the factors identified by the Tenth Circuit for considering whether to dismiss a Chapter 11 case for bad faith to a debtor's request to convert from Chapter 7 to Chapter 11); *In re FMO Associates, II, LLC,* 402 B.R. 546, 551 (Bankr.E.D.N.Y. 2009)(turning to factors used by the Second Circuit when determining whether the filing of a Chapter 11 petition was indicative of bad faith in order to evaluate a debtor's request to convert from Chapter 7 to Chapter 11).

4

1) whether the debtor has only one asset;
2) whether the debtor acted improperly before the filing of the bankruptcy;
3) whether there are relatively few unsecured creditors;
4) whether there are pending foreclosure proceedings against the debtor's property;
5) whether the debtor has been resisting one creditor in particular and has lost in an action against that creditor in another forum;
6) whether the filing of the petition has the effect of allowing the debtor to evade court orders;
7) whether the debtor has ceased business activities and has no employees; and
8) whether there is a lack of possibility for reorganization.

*George Love Farming,* 366 B.R. at 178 (citations omitted).[6]

To this list, the Court adds whether creditors would receive substantially more in a chapter 11 case than from a liquidation of nonexempt assets of the bankruptcy estate in a chapter 7 case. This factor further balances the overarching policies of the Bankruptcy Code of providing relief to the honest but unfortunate debtor, preserving going concerns, and maximizing value for creditors.[7] Overall, when considering a debtor's motion to convert, the Court employs a "totality of the circumstances" approach. *FMO Associates,* 402 B.R. at 552.[8]

In this case, the evidence at the final hearing demonstrated that the Debtor's Statement of Financial Affairs and Schedules are neither complete nor correct. Within one year of the filing of the Debtor's bankruptcy petition, the Debtor transferred certain unencumbered real property

---

[6] Other factors include 1) whether the timing of the petition indicates an effort to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; 2) whether the debtor has little or no cash flow; and 3) whether the debtor cannot meet current expenses. *FMO Associates,* 402 B.R. at 551 (citation omitted).

[7] *See Stellwagen v. Clum,* 245 U.S. 605, 617, 38 S.Ct. 215, 62 L.Ed. 507 (1918)(stating that "[t]he federal system of bankruptcy is designed not only to distribute the property of the debtor, not by law exempted, fairly and equally among his creditors, but as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life . . ."); *Toibb v. Radloff,* 501 U.S. 157, 163, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991)(acknowledging "that Chapter 11 also embodies the general Code policy of maximizing the value of the bankruptcy estate.")(citation omitted). *See also, In re Orienta Co-op Ass'n,* 256 B.R. 508, 511 (Bankr.W.D.Okla. 2000)(observing that "[t]he two recognized policies, underlying Chapter 11 are 'preserving going concerns and maximizing property available to satisfy creditors.'")(quoting *Bank of America Nat'l Trust Ass'n v. 203 North LaSalle Street P'ship,* 526 U.S. 434, 453, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999)); *In re Martin,* 373 B.R. 731, 735-736 (Bankr.D.Utah 2007)(noting that "[t]he bankruptcy system was designed to protect and benefit the 'honest but unfortunate debtor.'")(quoting *Marrama,* 549 U.S. at 374).

[8] *See also, George Love Farming,* 366 B.R. at 178 (electing to apply the factors relevant to the determination of dismissal or conversion "in connection with a totality of circumstances analysis" for purposes of considering whether to deny a debtor's request to convert from Chapter 7 to Chapter 11).

located at 56 Spring Road known as the Waterfall Lodge by quitclaim deed to Jonathan Kwon. The transfer was made without consideration. Jonathan Kwon is the Debtor's stepson. *See* Exhibit 8. The Debtor estimates that the value of the Waterfall Lodge is between $395,000.00 (as listed on Amended Schedule B) and $895,000.00 (as reported in a Personal Financial Statement prepared by the Debtor in 2008). *See* Exhibit 4. Post-petition, the Waterfall Lodge was transferred back to the Debtor by quitclaim deed. *See* Exhibit D. The Debtor failed to disclose the pre-petition transfer of the Waterfall Lodge in her Statement of Financial Affairs.

The Debtor failed to list several items of personal property on Schedule B. For example, the Debtor testified that certain artwork was stolen, but that she recovered some of it about two months ago. Yet her Amended Schedule B, filed March 31, 201, checks "none" in response to Item 5 (books, pictures and other art objects). The Debtor also failed to list in Schedule B certain other personal property that is property of the bankruptcy estate: 1) her wedding ring; and 2) a $30,000 ring that she believed had been stolen but that she later found in her office. She has not filed an Amended Schedule B to list these items; her Amended Schedule B checks "none" in response to Item 7 (Furs and Jewelry).

The Debtor also failed to identify several transfers or other gifts of personal property on her Statement of Financial Affairs. She testified that she transferred jewelry she values at $50,000.00 to her sister who took it to Korea. She did not disclose this transfer of personal property in her Statement of Financial Affairs, either in response to Item 7 – Gifts, or in response to Item 10 – Other Transfers. The Debtor purchased a Ford Explorer in 2010 that she transferred to her business entity, Sonoma Dental, LLC, approximately one month before the filing of her bankruptcy case. The Debtor failed to disclose the transfer of the vehicle on her Statement of Financial Affairs.

6

The Debtor testified at the final hearing that her secretary stole from her. Her Amended Statement of Financial Affairs discloses a theft of jewelry and electronic devices valued at $23,000.00. She eventually recovered between $6,000.00 and $15,000 from her homeowner's insurance policy to compensate her for her loss, but she did not report in her Schedules the insurance claim or the proceeds received on the claim.

The Debtor's Schedule I is misleading. The Debtor's Schedule I reflects that she is employed by Days Inn & Suite in the field of public relations, earning monthly gross wages of $2,166.66. The Debtor, who was born in Seoul, Korea and moved to the United States in 1980, is a dentist. Because the Days Inn & Suite business was not financially successful, in late 2010 the Debtor started a dental practice, Sonoma Dental, LLC, that focuses on cosmetic dentistry, including implants, surgery, and prosthetics. She testified that, in recent months she has been earning more than $7,500.00 per month from the operation of Sonoma Dental, LLC, which includes $1,500.00 that Sonoma Dental, LLC pays her for renting the office space. The dental practice is the Debtor's principal source of income. Schedule I does not reflect the Debtor's employment as a dentist. The Debtor has not filed an amended Schedule I to reflect her employment as a dentist.[9]

The Debtor's misstatements, omissions, and other pre- and post-petition bad acts, when considered together, are significant. Her testimony regarding these deficiencies indicates that, at the very least, she did not take her responsibility of full, complete, and accurate disclosure seriously. The Court finds that Bank 34 has demonstrated bad faith conduct on the part of the

---

[9] Some of the other improper acts that Bank 34 relies upon in its objection relate to the Present is Present bankruptcy case. The Debtor was the principal of Present is Present. The Debtor used certain funds in connection with the Present is Present bankruptcy case that she was not entitled to use. Upon advice of counsel, she returned the funds. Ultimately, the Debtor stipulated to the dismissal of the Present is Present bankruptcy case. These actions were not taken in connection with the instant bankruptcy case. Because the Court finds that the Debtor's actions in this case are sufficient to demonstrate that the Debtor has failed to act in good faith, it is unnecessary to rely on this additional evidence of the Debtor's prior conduct in connection with the Present is Present bankruptcy case to conclude that the Motion to Convert should be denied.

7

Debtor.[10] However, the Court must determine whether the bad faith conduct is sufficient to warrant denial of the Motion to Convert. In doing so, the Court considers whether conversion to Chapter 11 would be an abuse of process by weighing the nature and extent of the bad faith conduct and considering other factors such as preservation of value for creditors and preserving a going concern.

### Whether the Debtor Should be given an opportunity to reorganize under Chapter 11

In defense of her request to convert, the Debtor admits that her Statement of Financial Affairs and Schedules contain deficiencies, but points out that she sought to convert her case *before* her meeting of creditors and before Bank 34 conducted a Rule 2004 exam in which many of the deficiencies were identified.[11] She thus distinguishes the circumstances surrounding her request to convert from those cases that deny a debtor's motion to convert wherein the debtor seeks conversion only *after* a creditor or the trustee identifies alleged improper transfers or undisclosed assets. Finally, the Debtor urges the Court to consider the potential impact of conversion on creditors before denying a voluntary request to convert to Chapter 11.

The Debtor submitted a draft of her proposed Chapter 11 plan of reorganization at the final hearing on the Motion to Convert. The proposed plan falls significantly short of demonstrating that the Debtor should be permitted to convert to Chapter 11 at this time. The draft plan does not contemplate a sale of the Waterfall Lodge, the Debtor's most valuable unencumbered asset. To the contrary, at the final hearing, the Debtor candidly testified that she would prefer to keep the Waterfall Lodge property and use it as a religious retreat center rather

---

[10]*See George Love Farming,* 366 B.R. at 179 (explaining that the debtor bears the initial burden of establishing that the case has not previously been converted and that the debtor is otherwise eligible to be a debtor under the converted chapter, and that "[o]nce the debtor establishes these requirements, the burden is placed on an objecting party to show that the debtor is attempting to convert the case in bad faith."); *FMO Associates,* 402 B.R. at 551 (stating that "it is the burden of the trustee or other objecting party to object to the motion to convert . . .").

[11] The Court notes that the Debtor filed the Motion to Convert two days after Bank 34 filed its Motion for 2004 Examination. *See* Docket No. 18 – Motion for 2004 Examination, filed January 4, 2011 and Docket No. 21 – Debtor's Motion to Convert Case to One Under Chapter 11, filed January 6, 2011.

8

than sell it for the purpose of funding a Chapter 11 plan. The plan as now proposed contemplates no sales or surrender of assets and contribution of only the minimum amount of disposable income that would be required to satisfy the best interests of creditors and the projected disposable income requirements contained in 11 U.S.C. § 1129(a).

There is, however, some evidence now before the Court that suggests that the Debtor could propose a plan that pays significantly more than holders of allowed unsecured nonpriority claims could expect to receive if the bankruptcy estate were liquidated under Chapter 7. For example, the Debtor testified that her dental practice has gained significant profitability since the filing of her bankruptcy petition. She could propose to contribute significantly more than the minimum necessary to satisfy the best interest of creditor's requirement by contributing projected disposable income for more than five years. The Waterfall Lodge is unencumbered and has significant value. If the Debtor were willing to sell the Waterfall Lodge, it is possible that the Debtor by using those sale proceeds and contributing disposable income, as necessary, could propose a plan that pays 100% of creditor's claims. The Debtor could also free up additional disposable income if she were to forfeit her larger residence (encumbered by two mortgages requiring monthly debt service of $5,500.00 and 700.00, respectively) and move into the other residential property listed on Amended Schedule B.

Part of the rationale of *Marrama* is to deny a debtor's request to convert when the end result (liquidation under Chapter 7 or dismissal) would be the same even if the debtor were allowed to convert. But in evaluating a request to dismiss or convert a Chapter 11 proceeding, the Court must also take into account what is in the best interest of creditors and the bankruptcy estate.[12] Here, the Debtor's assets and income stream are significant. There appears to be a

---

[12]*See In re OptInRealBig.com, LLC,* 345 B.R. 277, 282 (Bankr.D.Colo. 2006)(outlining the two-step process for dismissal or conversion under §1112(b) as follows: first, the court determines whether "cause" exists; and second,

9

realistic possibility that unsecured creditors would fare far better through reorganization under Chapter 11rather than from a liquidation under Chapter 7. For this reason, even though the Debtor's prior bad faith conduct is sufficient to deny her request to convert when considered in light of the proposed chapter 11 plan in evidence, the Court will deny the Motion to Convert without prejudice to filing another motion to convert within thirty days supported by a proposed Chapter 11 plan that she would commit to file if this case were converted to a case under Chapter 11.

The Court will enter an order consistent with this Memorandum.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: June 10, 2011

COPY TO:

**Christopher M Gatton**
Law Office of George Dave Giddens, PC
Attorney for Debtor
10400 Academy Rd., #350
Albuquerque, NM 87111

**James A Roggow**
Attorney for Bank '34
PO Drawer 1837
Las Cruces, NM 88004-1837

**United States Trustee**
PO Box 608
Albuquerque, NM 87103-0608

---

the court determines whether dismissal or conversion of the case is in the best interest of creditors and the estate.)(citation omitted). *See also, 10 Bears at Chiloquin, Inc.,* 2007 WL 1673538, at *3 (Bankr.D.Or. June 6, 2007)(evaluating a debtor's voluntary request to convert from Chapter 7 to Chapter 11 and acknowledging that "[n]otwithstanding the existence of cause, the Court shall not convert or dismiss a case if there are 'unusual circumstances specifically identified by the court' establishing that conversion or dismissal would not be in the best interest of creditors and the estate.")(quoting 11 U.S.C. §1112(b)(1) and (2)).